**PUNCH et al. v. GERLACH et al.**

No. 4901.

Court of Civil Appeals of Texas.

Beaumont.

April 1, 1954.

Rehearing Denied April 28, 1954.

James E. Faulkner, Cold Spring, for appellants.

Hightower &· Wheat, Liberty, Campbell & Foreman, Livingston, Vinson, Elkins, .& Weems, Houston, for appellees.

R. L. MURRAY, Chief Justice.

The appellants, Charlie Punch, et al., 'except appellant James E. Faulkner, as the heirs of Fred and Nancy Punch, sued the appellees A. E. Gerlach and J. F. Taylor in trespass to try title to recover an undivided five-eighths of the oil and gas and other minerals of a 95.6 acre tract of land in the J. D. Martinez League 4 in San Jacinto County. Appellant Faulkner sued, as a vendee of the heirs of Fred and Nancy Punch. In addition to the statutory trespass to try title action, the appellants pleaded title in them under the 3, 5, 10, and 25 year statutes of limitation, Vernon's Ann. Civ.St. arts. 5507, 5509, 5510, 5519. They also specially pleaded that a mineral or a royalty deed from their ancestors, Fred and Nancy Punch, to appellee A. E. Gerlach, and under which A. E. Gerlach claimed, was void because the land at the time of the mineral deed was the homestead of Fred and Nancy Punch and that they did not acknowledge the said deed before an officer, authorized to take acknowledgments, and also that the acknowledgment by mark was not witnessed; and they further pleaded that the appellee A. E. Gerlach had on June 11, 1928 quitclaimed all the rights he acquired under such mineral deed back to Fred and Nancy Punch.

Appellee A. E. Gerlach filed a plea of not guilty and a general denial, and the appellee Taylor filed a plea of not guilty, general denial, and the 2 and 4 year statutes of limitation, laches, estoppel, innocent purchaser and the 3, 5, 10 and 25 year statutes of limitation.

The case was tried to a jury and at the close of the evidence both sides filed motions for instructed verdict. Appellants did not present any testimony to prove limitation title in them under any of the statutes to the minerals under the land. The trial court instructed a verdict in favor of the appellees, Gerlach and Taylor, and overruled the motion of the appellants. Judgment based on the instructed verdict was entered in favor of the appellees and the appellants have perfected their appeal.

The appellants bring their appeal under ten points of error. The parties to this appeal, both the appellants and the appellees, state in their briefs however, and we agree with them, that the crux of the matter is to be found in the construction of the instrument executed by the appellee A. E. Gerlach dated June 11, 1928, in favor of Fred and Nancy Punch by which he quitclaimed certain rights to them. The appellants' view of this instrument is raised by their Points Nos. 1, 2 and 3 and they will be considered together. By these points the appellants contend that the trial court erred in granting the appellees' motion for instructed verdict and in not granting their own such motion for the reason, as they contend, that the instrument referred to quitclaimed all mineral rights in the land in suit back to Fred and Nancy Punch. It is the contention of the appellees that such instrument referred to did not convey and quitclaim the minerals in the land to the Punches but merely released an oil and gas lease to Fred and Nancy Punch.

The instrument itself reads as follows:

"Universal Form No. 3

"Release of Oil and Gas Leases,

"Know All Men By These Presents:—

"That, the undersigned, in consideration of the sum of $1.00 cash, and other valuable consideration, receipt of which is hereby acknowledged, hereby releases, relinquishes

and forever quitclaims any and all rights whatsoever acquired or held under a certain oil and gas lease, dated May 10, 1928, executed by Fred Punch and Nancy Punch, to A. E. Gerlach, and recorded in volume 21, page 272 of the Deed Records of San Jacinto County, State of Texas, and covering the following described tract of land situated in the County of San *Jaxinto,* State of Texas, to-wit:—

"A deed W. J. Simmons to Fred Punch for 80 acres of land more or less, filed for record July 8, 1918, in San Jacinto County record of Deed Book No. 12, page 508 and 509.

"And

"A deed W. J. Simmons to Fred Punch for 15.6 acres of land, more or less, filed for record Nov. 20, 1922, in San Jacinto County Records of Deed Book No. 16, page 113,

"All.in all containing 95.6 acres of land, more or less.—

"Executed this 11th. day of June, 1928

"A. E. Gerlach."

The background for this controversy is found in the following facts, which are undisputed in the record:

On May 10, 1928, Fred Punch and wife, Nancy Punch, made, executed and delivered to appellee A. E. Gerlach a mineral conveyance to $\frac{1}{2}$ of the minerals on, in and under the 95.6 acres of land in the Martinez League No. 4. This mineral deed or conveyance was recorded in Vol. 21, page 272 of the Deed Records of San Jacinto County on May 10, 1928. The material and controlling parts of this mineral conveyance are as follows:

Granting Clause — "have and by these presents does grant, bargain, sell, convey, set over, and assign and deliver to A. E. Gerlach" — followed by a conveyance of $\frac{1}{2}$ of the minerals. in, on and under the 95.6 acre tract.

The mineral conveyance recited, "and the said above described lands now being held under an oil and gas lease originally executed in favor of A. E. Gerlach." The mineral conveyance contains the usual and customary "to have and to hold" and general warranty clauses.

On May 10, 1928, Fred and Nancy Punch also made, executed and delivered to the appellee A. E. Gerlach an ordinary oil and gas lease on the said 95.6 acres for a primary term of five years from date of lease and as long thereafter as oil and gas are produced from the leased land, and provided for the usual and customary $\frac{1}{8}$th royalty. The oil and gas lease further provided that if a well was not commenced on or before the 10th of November, 1928 that the lease should terminate unless the lessee paid 50¢ per acre which would defer the drilling for six months from said date. The lease provided for such successive extensions of the lease by the payment of 50¢ per acre during the term of the lease. This lease was recorded on May 11, 1928 in Volume 4, page 502 of the Oil Lease Records of San Jacinto County, Texas.

A. E. Gerlach and wife, Tommie V. Gerlach, on January 18, 1952 conveyed a $\frac{1}{4}$th non-participating royalty under the 95.6 acres to appellee J. F. Taylor.

On June 11, 1928, A. E. Gerlach executed in favor of Fred and Nancy Punch the instrument set out above.

It will be noted that in the instrument of release set out above Gerlach purported to thereby release, relinquish and forever quitclaim any and all rights whatsoever acquired or held "under a certain oil and gas lease, dated May 10, 1928, executed by Fred and Nancy Punch to A. E. Gerlach and recorded in Volume 21, page 272 of the Deed Records of San Jacinto County." It is also noted that the oil and gas lease executed by the Punches to Gerlach was recorded in Volume 4 at page 502 of the Oil Lease Records of San Jacinto County. It is also noted that recorded at Volume 21, page 272 of the Deed Records of San Jacinto County is to be found the mineral conveyance of one-half of the minerals under the land in suit from the Punches to Gerlach.

The trial court ruled that the release instrument presented a latent ambiguity and therefore permitted the introduction of parol extrinsic evidence to aid in the proper construction of the instrument. Such parol testimony showed that the release was intended and did in fact release and terminate the oil and gas lease, and was not a reconveyance of the minerals. Mr. Gerlach turned the matter over to his attorney, Mr. Fox Campbell, and told him to prepare a release of the oil and gas lease; the two instruments, both the mineral conveyance and the oil lease, were attached together by a paper clip and in the preparation of the release in the office of Mr. Campbell the false recording reference for the oil and gas lease sought to be released was written in the instrument.

When the release and quitclaim executed by A. E. Gerlach to Fred and Nancy Punch is construed in the light of the well known and understood distinction between an oil and gas lease and a mineral deed or conveyance, it is clear that the oil and gas lease was released. It appears from the face of the instrument that it was on a regular form of a release of an oil and gas lease, because we find it in the very beginning designated as "Universal Form No. 3. Release of Oil and Gas Leases." Following this, we find a recitation of a cash consideration of $1 and other valuable consideration, then followed by a release, relinquishment and quitclaim. It released "all rights whatsoever acquired or held under a certain oil and gas lease dated May 10, 1928 executed by Fred Punch and Nancy Punch to A. E. Gerlach." Excluding the recording reference of "the oil and gas lease," we find the following: "And covering the following described tract of land situated in the County of San Jacinto, State of Texas, to-wit:" Then follows a description of the identical land in the Martinez League that was covered by the oil and gas lease from Fred Punch and Nancy Punch to A. E. Gerlach, dated May 10, 1928. With this description and with the recording data discarded, a reference to the records of San Jacinto County would disclose an oil and gas lease from Fred and Nancy Punch to A. E. Gerlach dated May 10, 1928 covering the oil, gas and other minerals and creating a determinable fee on, in and under the 95.6 acres owned by Fred and Nancy Punch. An inspection of Volume 21, page 272 of the Deed Records of San Jacinto County, the recording data referred to in the release and quitclaim, would disclose that that instrument was not an ordinary oil and gas lease which had created a determinable fee but was a mineral deed or conveyance deeding and conveying a fee simple title which could not be lost by forfeiture or abandonment.

[1] Therefore, it is clear from the Texas decisions that the release and quitclaim reciting that it was a release of an oil and gas lease which was executed by Fred and Nancy Punch to A. E. Gerlach on May 10, 1928, and the recording reference to a deed of conveyance of half of the minerals, creates an ambiguity, thus permitting parol extrinsic evidence to prove the true intention of the parties to said release and quitclaim. The trial court was correct in so holding.

The testimony of Mr. Frank Gerlach, the brother of the appellee A. E. Gerlach, shows that Fred and Nancy Punch executed the mineral conveyance and the oil and gas lease in two separate instruments to A. E. Gerlach on the same date and at the same time; that during this transaction, his brother told Fred and Nancy Punch that he would try to sell the lease and would give them any money that he got for it and if he was not able to sell it, he would give the lease back to them. Mr. Frank Gerlach testified that Fred and Nancy Punch wanted his brother, A. E. Gerlach, to handle the oil and gas lease in that manner so they could get some money out of it, if possible.

The mineral deed or conveyance and the oil and gas lease show they were executed on the same day and both acknowledged before J. W. Modesett, Notary Public, and the mineral conveyance expressly refers to the "oil and gas lease" executed by Fred and Nancy Punch to A. E. Gerlach on the same day and makes it subject to the oil and gas lease. It, therefore, cannot be

questioned that Fred and Nancy Punch and A. E. Gerlach on May 10, 1928 were treating the "oil and gas lease" and the "mineral conveyance" as separate and distinct and distinguishable instruments.

The testimony of Mr. A. E. Gerlach and Mr. Fox Campbell clearly shows that the release and quitclaim was to cover and embrace the oil and gas lease and not the mineral deed. The recording reference in the release and quitclaim, a mistaken reference, creates a latent ambiguity and was subject to explanation by parol testimony. Strong v. Garrett, 148 Tex. 265, 224 S.W. 2d 471.

■ The release and quitclaim of the oil and gas lease recited to have been executed by Fred and Nancy Punch to A. E. Gerlach on May 10, 1928 to 95.6 acres of land was sufficient without the necessity of reference to the recording data; and the parol extrinsic testimony clearly shows that the recording data was false. Under such circumstances and facts, it was the duty of the trial court in construing the release and quitclaim to reject this false and mistaken recording data and since the undisputed evidence showed it was false, the court was required, as a matter of law, to construe the instrument as releasing only the oil and gas lease, and hence the instructed verdict was proper: See Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380; Sanborn v. Crowdus Bros. & Co., 100 Tex. 605, 102 S.W. 719; Carter & Bro. v. Davis, Tex.Civ.App., 88 S.W.2d 596; Reserve Petroleum Co. v. Harp, 148 Tex. 448, 226 S.W.2d 839.

We, therefore, conclude that the trial court was correct in instructing a verdict in favor of the appellees Gerlach and Taylor and in overruling the motion for instructed verdict by the appellants.

The appellants' 2nd, 3rd, 4th, 6th, 7th, 8th and 9th points complain of the introduction of parol testimony in support of the contentions of the appellees. We have concluded, as is noted above, that the instrument of release presented to the trial court a latent ambiguity and therefore the parol

testimony was properly admitted to ascertain the true effect of the instrument, and all of these points are therefore without merit.

■ The 5th point of the appellants was based upon the trial court's action in overruling their objection to the introduction of the mineral deed from the Punches to Gerlach over objection by the appellants, said objection being that the purported signature of Nancy Punch was by her mark and was not properly witnessed by two signatures by mark. This objection is without foundation and no authority is presented in support of the contention of the appellants in their brief and it is overruled.

The appellants' Point No. 10 reads as follows as copied verbatim from their brief:

"The Trial Court Erred in Excluding and refusing to admit into evidence Plaintiffs' (Appellants') Exhibits A, B, C, D, E, F, and G (Pertaining to many and various Oil, gas and mineral leases and conveyances made by Fred and/or Nancy Punch after their so-called royalty conveyance to the Appellee A. E. Gerlach in rebutal to the unwarranted evidence which the Court permitted Appellees' to introduce over the strenuous and timely objections of appellants (elsewhere herein assigned and discussed) as to the Intent of the parties at the time (1928) such proffered (but refused) evidence was material and vitally pertinent as being in reply and rebutal to the erroneously admitted self-serving hearsay testimony of appellees as to the 'intent' of the parties such refused evidence being vital and competent evidence that appellants' predecessors in title Fred and Nancy Punch treated such controversal 'Release or Quitclaim' for what it actually was, viz, a quitclaim and release of the Mineral interest originally conveyed to them by the Punches, such vital and competent Rebutal evidence having been excluded upon the singularly baseless objection of appellees that "it was not included in plaintiffs (appellants) chain of Title in this case and that they (appellees or defendants) had never been served with Notice of such instruments, St.F. p.

104, to all of which appellants duly and timely objected and were given a full bill, St.F. pp. 104 to 124 including exhibits set forth in full therein."

It is difficult to discuss this 10th point of appellants except in the general way in which it is briefed by the appellants themselves. Appellants offered in evidence seven different documents which were excluded by the trial court. Both parties say in their briefs that these instruments all had to do with the actions and intentions of Fred and Nancy Punch and concern matters and instruments which occurred and were executed long after the date of the instrument which is the center of this controversy, June 11, 1928. The only purpose for which the other parol testimony was introduced in this case was to determine the intent of the grantor in the instrument of release at the time he executed the instrument. The acts and deeds of Fred and Nancy Punch after that time could have no bearing on the intent of Gerlach at the time he signed and executed the release and the trial court was therefore not in error in excluding them from the evidence. The point presents no reversible error.

The objection was made at various points in the trial to the testimony of A. E. Gerlach and his brother, Frank Gerlach, and his attorney Fox Campbell that the matters testified to were a violation of Article 3716, Vernon's Ann.Civ.St., which lawyers customarily refer to as the "deadman's statute." We believe that the rule is well established that the test as to whether a state of facts constitutes a transaction with a deceased person so as to violate Article 3716, Vernon's Annotated Civil Statutes, is this: If the witness offered should testify falsely, could the deceased, if living, controvert it of his own personal knowledge? If the deceased could so controvert such facts, then the introduction of such evidence is barred by Article 3716. Dakoff v. National Bank of Commerce, Tex.Civ.App., 254 S.W.2d 550 (writ refused); McCall v. Owens, Tex.Civ.App.,

68 S.W.2d 1089 (error ref.); Huff v. Huff, Tex.Civ.App., 72 S.W.2d 675 (error dismissed); Atkins v. Dodds, Tex.Civ.App., 121 S.W.2d 1010; Dominguez v. Garcia, Tex.Civ.App., 36 S.W.2d 299; Id., Tex. Com.App., 53 S.W.2d 459. When the testimony of the three witnesses for the appellees is examined in the light of the above question we believe that the testimony objected to was not in violation of said Article 3716, and no error is shown in overruling such objection.

The judgment of the trial court is affirmed.